# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-377 |
| AYOUB TABRI | : | |

## GOVERNMENT'S AMENDED MOTION FOR PRETRIAL DETENTION

The government, by and through its attorneys, William M. McSwain, United States Attorney, and Vineet Gauri, Assistant United States Attorney, hereby submits this Amended Motion for Pretrial Detention to assist the Court in the detention hearing scheduled for Tuesday, December 8, 2020.

Pursuant to 18 U.S.C. § 3142(e)(3)(C), the charges under Sections 844(f)(2) and 844(i) carry a rebuttable presumption of detention. Indeed, the defendant has shown through his own actions that he poses a substantial risk to the community. He is charged with intentionally setting fire to a Pennsylvania State Police ("PSP") vehicle on May 30, 2020. Video footage shows him throwing a lit road flare into a PSP SUV. When the defendant decided to set fire to this vehicle, he risked the lives of numerous individuals who were in the vicinity of these vehicles. He destroyed a police vehicle that PSP had stationed to prevent protestors from gaining access to I-676 and from endangering themselves or motorists by demonstrating on the highway. On October 29, 2020, following his arrest and his signed waiver of his *Miranda* rights, the defendant admitted in a recorded statement that he lit a road flare and threw it into the PSP SUV.

The defendant has been charged by indictment with violations of 18 U.S.C. §§ 844(f)(1) and (f)(2), 844(i), 231(a)(3), and 2. If convicted of 18 U.S.C. § 844(f)(2), he faces a mandatory

minimum sentence of 7 years' imprisonment. The substantial penalties faced by the defendant provide a powerful incentive for him to flee. Moreover, if convicted of 18 U.S.C. §§ 844(f)(1), 844(f)(2), or 844(i), the defendant is deportable. *See* 8 U.S.C. §§ 1101(a)(43) and 1227(a)(2)(A)(iii). This provides another strong incentive for him to flee.

As there are no conditions or combination of conditions that will reasonably assure the defendant's appearance as required or the safety of the community, the government moves pursuant to 18 U.S.C. §§ 3142(e) and 3142(f)(1)(A) and (f)(2) for a detention hearing and pretrial detention of the defendant.

## I. THE FACTS

In support of this motion, the government makes the following representations and proposed findings of fact:

### A. Probable Cause And The Evidence In This Case

1. There is probable cause to believe that the defendant has violated 18 U.S.C. §§ 844(f)(1) and (f)(2), 844(i), 231(a)(3), and 2, as charged in the indictment. Pursuant to 18 U.S.C. § 3142(e)(3)(C), the charges under Sections 844(f)(2) and 844(i) carry a rebuttable presumption of detention.

2. The evidence in this case is strong.

    a. On May 30, 2020, based on a report of a large gathering of protesters, PSP troopers responded to the intersection of Broad and Vine Streets in Philadelphia at the overpass of Interstate 676 (also known as "I-676" or the "Vine Street Expressway"). I-676 is a limited-access highway which runs roughly in an east/west direction through Philadelphia. PSP placed two SUVs at an on-ramp for I-676 near Broad and Vine Streets. PSP troopers

responded to this area to prevent protestors from gaining access to I-676 and from endangering themselves or others by demonstrating on the highway and impeding motorists' travel.

b. At approximately 3:42 p.m. ET, a group of individuals began attacking the two PSP SUVs, which were designated as PSP Units K1-7 and K1-17. Both PSP SUVs were locked and contained PSP-issued rifles and other police equipment. Individuals began hitting the PSP SUVs with various objects, including skateboards, a bike lock, and unknown projectiles, as well as kicking and striking the vehicles with closed fists. Eventually, individuals shattered the windows of both PSP SUVs and stole PSP equipment stored inside, including road flares, fire extinguishers, and "riot bags" containing additional PSP-issued equipment. After these items were stolen, an individual sprayed the rear area of K1-17, inside and out, with an unknown liquid.

c. PSP troopers assigned to the area reported that individuals then threw lit road flares into K1-17, igniting the fire which engulfed that SUV. One PSP trooper, who was standing near K1-17, was hit by a lit road flare and part of his uniform caught fire. This trooper's left hand suffered burn injuries when he reached into K1-17 to retrieve a rifle in order to prevent individuals from stealing it. He was treated for his injuries on the scene by EMS.

d. Due to the fire damage to K1-17 and the physical damage to K1-7, both vehicles were destroyed. PSP's arson investigators determined that the fire that destroy K1-17 was incendiary in nature and started in the interior of the vehicle. In fact, K1-17 was almost completely destroyed by this fire, as pictured below:




e. From video footage posted to social media, investigators observed a male throwing a lit road flare into K1-17 while holding a skateboard and wearing a black T-shirt with a graphic design, black face mask, and a chain necklace, as shown in the screen captures below:







5





f. Investigators located a public social media post featuring a photo of the same male, without a mask but wearing the same black T-shirt with graphic design and chain necklace near Philadelphia City Hall on May 30, 2020. Investigators then located the social media account for this male, whom they confirmed (through law enforcement database checks) was Ayoub Tabri. Thereafter, investigators observed that Tabri had publicly posted on his social media account several photos and a video of the events of May 30, 2020 in Philadelphia, including burning vehicles.

g. Moreover, investigators later observed that Ayoub Tabri publicly posted to his social media account a video of Tabri picking up film prints from a photo printing

store. Screen captures from this video show Tabri's name, email, and address in Arlington, Virginia on the store invoice, as pictured below:



        h.      PSP receives federal funding. For example, in May 2020, PSP was in receipt of federal funding from, among others, the BJA Strategies for Policing Innovation Grant, identified as grant number 2018-AR-BX-0008, for approximately $682,867.

        i.      On October 29, 2020, following his arrest and his signed waiver of his *Miranda* rights, Tabri admitted in a recorded statement that he lit a road flare and threw it into the PSP SUV. Tabri also admitted that he is the individual depicted in the screen captures shown above in paragraph e.

    **B.**    **Maximum and Mandatory Minimum Penalties**

The statutory maximum penalty for violation of 18 U.S.C. § 844(f)(1) and (f)(2) is a mandatory minimum of seven years' imprisonment, up to a maximum of 40 years of

imprisonment. The statutory maximum penalty for violation of 18 U.S.C. § 844(i) is a mandatory minimum of five years' imprisonment, up to a maximum of 20 years of imprisonment. The statutory maximum penalty for violation of 18 U.S.C. § 231(a)(3) is five years' imprisonment. The sentencing judge may choose to order the mandatory minimum sentences to run concurrently or consecutively. Thus, the defendant faces a mandatory minimum of seven years' imprisonment, with a statutory maximum of 65 years of imprisonment.

### C. Criminal Record

The defendant has a 2015 citation for marijuana possession in Virginia. While he has a minimal criminal history, this did not prevent him from engaging in a dangerous arson in which he put many other persons at risk of death or serious injury.

### D. Lack of Employment and Ties to Community

The defendant has no known employment. Further, he has no known family ties to this District. Accordingly, there are no conditions that would assure his appearance in this case.

### E. If Convicted of Arson, the Defendant is Deportable

The defendant is a lawful permanent resident of the United States. However, if convicted of 18 U.S.C. §§ 844(f)(1), 844(f)(2), or 844(i), the defendant is deportable. *See* 8 U.S.C. §§ 1101(a)(43) and 1227(a)(2)(A)(iii). This provides another strong incentive for him to flee.

## II. CONCLUSION

The defendant committed arson by setting fire to a police vehicle on May 30, 2020. He did so despite the fact that there were numerous other individuals in the immediate vicinity who could have been injured or killed by fire or explosion. As a result of these actions, the defendant faces a mandatory minimum sentence of seven years' incarceration. If convicted on any of the arson charges, the defendant may be deported. An examination of all of these factors makes

clear that that no condition or combination of conditions will reasonably assure the presence of the defendant as required and/or the safety of the community.

WHEREFORE, the government respectfully submits that its Motion for Pretrial Detention should be granted.

                                                 Respectfully submitted,

                                                 WILLIAM M. McSWAIN
                                                 United States Attorney


                                                 */s Vineet Gauri*
                                                 Vineet Gauri
                                                 Assistant United States Attorney

**CERTIFICATE OF SERVICE**

      I hereby certify that the attached Amended Motion for Pretrial Detention and proposed Pretrial Detention Order have been served on the counsel identified below through the Electronic Case Filing (ECF) system and email:

Nancy MacEoin, Esq.
Assistant Federal Defender


*/s Vineet Gauri*
Vineet Gauri
Assistant United States Attorney


Dated: December 7, 2020.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-377 |
| AYOUB TABRI | : | |

### PRETRIAL DETENTION ORDER

AND NOW, this         day of December of 2020, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that this case is appropriate for detention because the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, and by a preponderance of the evidence that no conditions or combination of conditions that will reasonably assure the defendant's appearance as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

1. There is probable cause to believe that the defendant has violated 18 U.S.C. §§ 844(f)(1) and (f)(2), 844(i), 231(a)(3), and 2, as charged in the indictment. Pursuant to 18 U.S.C. § 3142(e)(3)(C), the charges under Sections 844(f)(2) and 844(i) carry a rebuttable presumption of detention.

2. The evidence in this case is strong.

    a. On May 30, 2020, based on a report of a large gathering of protesters, PSP troopers responded to the intersection of Broad and Vine Streets in Philadelphia at the overpass of Interstate 676 (also known as "I-676" or the "Vine Street Expressway"). I-676

is a limited-access highway which runs roughly in an east/west direction through Philadelphia. PSP placed two SUVs at an on-ramp for I-676 near Broad and Vine Streets. PSP troopers responded to this area to prevent protestors from gaining access to I-676 and from endangering themselves or others by demonstrating on the highway and impeding motorists' travel.

    b.  At approximately 3:42 p.m. ET, a group of individuals began attacking the two PSP SUVs, which were designated as PSP Units K1-7 and K1-17. Both PSP SUVs were locked and contained PSP-issued rifles and other police equipment. Individuals began hitting the PSP SUVs with various objects, including skateboards, a bike lock, and unknown projectiles, as well as kicking and striking the vehicles with closed fists. Eventually, individuals shattered the windows of both PSP SUVs and stole PSP equipment stored inside, including road flares, fire extinguishers, and "riot bags" containing additional PSP-issued equipment. After these items were stolen, an individual sprayed the rear area of K1-17, inside and out, with possibly flammable liquid.

    c.  PSP troopers assigned to the area reported that individuals threw lit road flares into K1-17, igniting the fire which engulfed that SUV. One PSP trooper, who was standing near K1-17, was hit by a lit road flare and part of his uniform caught fire. This trooper's left hand suffered burn injuries when he reached into K1-17 to retrieve a rifle in order to prevent individuals from stealing it. He was treated for his injuries on the scene by EMS.

    d.  Due to the fire damage to K1-17 and the physical damage to K1-7, both vehicles were destroyed. PSP's arson investigators determined that the fire that destroy K1-17 was incendiary in nature and started in the interior of the vehicle. In fact, K1-17 was almost completely destroyed by this fire, as pictured below:




e. From video footage posted to social media, investigators observed a male throwing a lit road flare into K1-17 while holding a skateboard and wearing a black T-shirt with a graphic design, black face mask, and a chain necklace, as shown in the screen captures below:











f. Investigators located a public social media post featuring a photo of the same male, without a mask but wearing the same black T-shirt with graphic design and chain necklace near Philadelphia City Hall on May 30, 2020. Investigators then located the social media account for this male, whom they confirmed (through law enforcement database checks) was Ayoub Tabri. Thereafter, investigators observed that Tabri had publicly posted on his social media account several photos and a video of the events of May 30, 2020 in Philadelphia, including burning vehicles.

g. Moreover, investigators later observed that Ayoub Tabri publicly posted to his social media account a video of Tabri picking up film prints from a photo printing

5

store. Screen captures from this video show Tabri's name, email, and address in Arlington, Virginia on the store invoice, as pictured below:



        h.     PSP receives federal funding. For example, in May 2020, PSP was in receipt of federal funding from, among others, the BJA Strategies for Policing Innovation Grant, identified as grant number 2018-AR-BX-0008, for approximately $682,867.

        i.     On October 29, 2020, following his arrest and his signed waiver of his *Miranda* rights, Tabri admitted in a recorded statement that he lit a road flare and threw it into the PSP SUV. Tabri also admitted that he is the individual depicted in the screen captures shown above in paragraph e.

        3.     The defendant has a 2015 citation for marijuana possession in Virginia.

        4.     The statutory maximum penalty for violation of 18 U.S.C. § 844(f)(1) and (f)(2) is a mandatory minimum of seven years' imprisonment, up to a maximum of 40 years of

imprisonment. The statutory maximum penalty for violation of 18 U.S.C. § 844(i) is a mandatory minimum of five years' imprisonment, up to a maximum of 20 years of imprisonment. The statutory maximum penalty for violation of 18 U.S.C. § 231(a)(3) is five years' imprisonment. The sentencing judge may choose to order the mandatory minimum sentences to run concurrently or consecutively. Thus, the defendant faces a mandatory minimum of seven years' imprisonment, with a statutory maximum of 65 years of imprisonment.

5. The defendant has no known employment. Further, he has no known family ties to this District.

6. The strength and nature of the case against the defendant, combined with the strong likelihood that the defendant will be incarcerated for a significant period of time, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

7. The defendant is a lawful permanent resident of the United States. However, if convicted of 18 U.S.C. §§ 844(f)(1), 844(f)(2), or 844(i), the defendant is deportable. *See* 8 U.S.C. §§ 1101(a)(43) and 1227(a)(2)(A)(iii). This provides another strong incentive for him to flee.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person

in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE RICHARD A. LLORET
United States Magistrate Judge