**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-00377-1 |
| AYOUB TABRI | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On May 30, 2020, amidst civil disorder in Center City, Philadelphia, in the wake of the death of George Floyd, defendant Ayoub Tabri walked through a crowd of protestors, approached an unoccupied marked Pennsylvania State Police vehicle, and threw a lit road flare into a shattered window of the SUV. For the reasons provided below, the government recommends a sentence within the applicable guidelines range of 37 to 46 months' imprisonment.

**I.    INTRODUCTION**

The government submits this memorandum in advance of the sentencing hearing scheduled for July 18, 2022. A grand jury returned a superseding indictment on May 25, 2021, charging defendant Tabri, along with codefendant Lester Fulton Smith, with one count of maliciously damaging, destroying, and attempting to do the same by fire, a vehicle owned by the Pennsylvania State Police ("PSP"), an organization receiving federal funding, in violation of 18 U.S.C. §§ 844(f)(1), (f)(2), and 2 (Count One); one count of arson affecting interstate commerce, in violation of 18 U.S.C. §§ 844(i) and 2 (Count Two); and one count of obstructing, impeding, and interfering with law enforcement officers lawfully engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder, which obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in

commerce, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Count Three).  On March 22, 2022,

defendant Tabri entered a plea of guilty, pursuant to a written plea agreement between the parties, to

Count Three (civil disorder) of the Superseding Indictment.  The government has agreed to move to

dismiss Counts One and Two at the time of sentencing.

## II.    SENTENCING CALCULATION

### A.  Maximum Sentence

Count Three (civil disorder):  five-years' imprisonment, a three-year term of supervised

release, a $250,000 fine, and a $100 special assessment.  Pursuant to the plea agreement, the

defendant agrees to pay mandatory restitution in the amount of $87,000.  The defendant, who is not

a citizen of the United States, is subject to immigration proceedings, which will likely result in

him being removed from the United States, denied citizenship, and denied admission to the

United States in the future.

If supervised release is revoked, the original term of imprisonment may be increased by up to

two years on Count Three. Thus, a violation of supervised release increases the possible period of

incarceration and makes it possible that the defendant will have to serve the original sentence, plus an

additional period of imprisonment without credit for time already spent on supervised release.

### B.  Sentencing Guidelines Calculation

The Probation Office correctly calculated defendant Tabri's Total Offense Level at 21 and

his Criminal History Category as I, resulting in a Sentencing Guidelines range of 37- 46 months'

imprisonment.  The defendant did not file any objections to the Presentence Report.  The details of

the calculation are as follows:

| | |
|---|---|
| Base Offense Level<br>    U.S.S.G. § 2K1.4(a)(1) | 24 |
| Adjusted Offense Level | 24 |
| Acceptance of Responsibility<br>    U.S.S.G. § 3E1.1(a), (b) | - 3 |
| Total Offense Level<br>Criminal History Category I | 21 |
| Sentencing Guideline Imprisonment Range: | 37 to 46 months |

## III.   SENTENCING ANALYSIS

A thorough consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a)

counsels in favor of a sentence of imprisonment within the advisory range of 37 to 46 months.

The Supreme Court has declared: "As a matter of administration and to secure

nationwide consistency, the Guidelines should be the starting point and the initial benchmark."

*Gall v. United States*, 552 U.S. 38, 49 (2007).  "These requirements mean that '[i]n the usual

sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and

impose a sentence within the range."  *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013)

(quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in

original).  "Common sense indicates that in general, this system will steer district courts to more

within-Guidelines sentences."  *Peugh*, 133 S. Ct. at 2084.  "The federal system adopts procedural

measures intended to make the Guidelines the lodestone of sentencing."  *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in

Section 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the

history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the

offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public

from further crimes of the defendant; (4) the need to provide the defendant with educational or

vocational training, medical care, or other correctional treatment in the most effective manner;

(5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to

avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the

offense.  18 U.S.C. § 3553(a).

A.      **Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

On May 25, 2020, George Floyd died while in the custody of the Minneapolis,

Minnesota, Police Department.  The circumstances surrounding George Floyd's death drew

significant media attention.  In the days following Floyd's death, large-scale protests were held

throughout the United States.  One such protest took place on Saturday, May 30, 2020, in and

around Center City, Philadelphia.  PSR ¶ 13.

While initial protests in Philadelphia were peaceful, violence later erupted.  Among other

things, some groups of individuals began to riot, smashing store fronts, looting stores, and

attacking police vehicles, including two PSP SUVs.  That afternoon, PSP troopers responded to

the intersection of Broad and Vine Streets, near an on-ramp for Interstate 676 (the "Vine Street

Expressway"), based on a report of a large gathering of protesters.  The PSP troopers responded

to the area to prevent protestors from gaining access to I-676 and from endangering themselves

or others by demonstrating on the highway and thus impeding motorists' travel.  PSR ¶ 14.

Shortly thereafter, according to PSP troopers, other law enforcement and civilian

witnesses, and video and photographic evidence, a group of individuals attacked two PSP

vehicles, both marked gray Ford Explorers designated as PSP Units K1-7 and K1-17, which the

troopers had parked near the intersection to control the crowds.  Individuals were seen hitting the

PSP SUVs with various objects, including skateboards, a bike lock, and unknown projectiles, in

addition to kicks and strikes from closed fists.  Eventually, individuals shattered the windows of

both PSP SUVs and stole PSP equipment stored inside, including road flares and other police

equipment.  One individual sprayed the rear area of K1-17, inside and out, with a flammable

liquid.  PSR ¶ 15.

Video and photographic surveillance captured defendant Tabri, amidst the civil disorder,

walk through the crowd of protestors, approach PSP vehicle K1-17, and throw a lit road flare

into the shattered driver's window of the SUV.  Several other individuals were also observed

throwing lit road flares into vehicle K1-17, igniting the fire which engulfed the vehicle in flames.

One PSP trooper, "LF," who was standing near the vehicle at the time, was hit by a lit road flare,

causing part of his uniform to catch fire and a burn to his hand.  (He was treated for his injuries

on the scene.)  Due to the size of the crowd, fire personnel were unable to extinguish the vehicle

fire, which destroyed SUV K1-17.  PSR ¶¶ 16-17.

Defendant Tabri, age 25, is a native and citizen of Morocco, and a lawful permanent

resident of the United States.  PSR ¶¶ 8, 61.  He entered the United States with his family, at the

age of five years old.  At the time of his arrest, he was residing with his mother and younger

brother in Arlington, Virginia, the general area in which he grew up.  PSR ¶¶ 48, 51, 54, 61.

The defendant graduated from high school and has a history of employment in the food

service/restaurant industry.  PSR ¶¶ 72, 75-79.  He has one prior conviction for possession of

marijuana in 2016 in Arlington County, Virginia, for which he was ordered to pay a fine.  PSR

¶¶ 40-46.

On October 29, 2000, at the time of his arrest in the current matter, defendant Tabri

waived his *Miranda* rights and admitted to law enforcement agents that, on May 30, 2020, while

skateboarding with friends in Center City, Philadelphia, he ended up at the protests near the

intersection of Broad and Vine Streets, where he threw rocks at a police vehicle and then picked

up a road flare from the ground, which he lit with a cigarette lighter and threw at the police

vehicle.  PSR ¶ 20.  18 U.S.C. §  3553(a)(1).

> **B.      The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment and Adequate Deterrence, and Protect the Public**

Obstructing, impeding, and interfering with law enforcement officers lawfully engaged in

the performance of their official duties incident to and during the commission of a civil disorder,

which obstructs, delays, and adversely affects commerce and the movement of any article and

commodity in commerce, is a serious offense.  The defendant's act of throwing a lit flare into a

police vehicle that was situated in an area densely populated with both law enforcement officers

and protestors no doubt created a substantial risk of death and serious bodily harm to others.

A factor in the sentencing determination is both specific and general deterrence.  As the

courts of appeals have held both before and after *Booker*, deterrence under 3553(a) is not limited

to deterrence of the particular defendant.  *See e.g. United States v. Jordan*, 435 F.3d 693, 698

(7th Cir. 2006) (describing how Section 3553(a) "specifies that the court may consider the need

for general deterrence and respect for the law"); *United States v. Glover*, 431 F.3d 744, 751 (11th

Cir. 2005) (noting that pre-*Booker* and post-*Booker*, "the underlying goals of the statute and the

Guidelines are retribution, general deterrence, incapacitation, and rehabilitation" (internal

quotation marks omitted)); *see also United States v. Yeaman*, 248 F.3d 223, 232 (3d Cir. 2001)

(referring to Section 3553(a)'s goals of "general deterrence, specific deterrence, retribution, and rehabilitation").

Considering the nature and seriousness of the offense, a guidelines sentence is the best way to satisfy the objectives of § 3553(a).  Such a sentence in this case will "reflect the seriousness of [the defendant's] offense . . . promote respect for the law . . . provide just punishment for the offense . . . protect the public from further crimes of the defendant . . . [and] afford adequate deterrence to [further] criminal conduct. . ." 18 U.S.C. § 3553(a)(2)(A), (B), and (C).

**C.     The Need to Provide the Defendant with Educational or Vocational Training and Medical Care**

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner ...." § 3553(a)(2)(D).  PSR ¶¶ 64-68, 73-79.  While serving an otherwise appropriate sentence, the defendant will have the opportunity to take advantage of educational and/or vocational training.  A three-year term of supervised release will also prove an efficient avenue for continued monitoring, and treatment, if warranted, of possible substance abuse issues.  PSR ¶¶ 69-71.

**D.     The Need to Avoid Unwarranted Sentencing Disparities**

The sentencing guidelines aim to achieve uniform and appropriate treatment of like crimes, represent the distillation of more than 20 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress.  All of these policy reasons support the imposition of a sentence of imprisonment within the applicable guideline range in this case.  18 U.S.C. § 3553(a)(6).

E.      **The Need to Provide Restitution**

The provisions of the Mandatory Victim Restitution Act of 1996 apply to the offense of

conviction in this matter.  The Pennsylvania State Police, as an agency, and PSP Trooper LF,

who sustained injuries, are considered victims.  Pursuant to the guilty plea agreement entered

into between the parties, the defendant has agreed to pay restitution in the amount of $87,000.

PSR ¶ ¶ 20-24.  18 U.S.C. § 3553(a)(7).

IV.     **CONCLUSION**

For these reasons, the government recommends that the Court impose a sentence of

imprisonment within the guideline range of 37 to 46 months in this case.

        Respectfully submitted,

        JACQUELINE C. ROMERO
        United States Attorney


        */s/* Christine E. Sykes
        CHRISTINE E. SYKES
        VINEET GAURI
        Assistant United States Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

Nancy MacEoin, Esquire
Assistant Federal Defender
The Curtis Center, Suite 540 West
601 Walnut Street
Philadelphia, PA 19106

*/s/ Christine E. Sykes*
CHRISTINE E. SYKES
Assistant United States Attorney

Date:  July 11, 2022